**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Sammy Joe Sanchez,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>City of Tucson, et al.,<br><br>　　　　　Defendants. | CV 14-1903-TUC-RM (JR)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Motion for Partial Summary Judgment (Doc. 115) filed by Defendants City of Tucson ("City"), Jason Garrels, Patricia Garrels, and Eric Evans ("City Defendants" when referred to collectively). Defendant George Bravo has joined the City Defendants' Motion (Doc. 117). Plaintiff Sammy Joe Sanchez ("Plaintiff") opposes the motion (Doc. 118). The City Defendants filed a reply (Doc. 120), in which Defendant Bravo joined (Doc. 121). Oral argument on the motion was heard by the Court on March 23, 2016 (Doc. 123). After the hearing, the Court requested clarification of some of the Plaintiff's citations in his statement of facts and Plaintiff filed Plaintiff's Corrections to Statement of Facts (Doc. 125). After considering the arguments raised in the parties' briefing and at oral argument,

1

the Court recommends that the District Court grant in part and deny in part the Defendants' motion for summary judgment.

## I.      Factual Background

The following facts are construed "in the light most favorable to the nonmoving party" and "all justifiable inferences" are drawn in favor of Plaintiff. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

On January 27, 2014, Plaintiff's wife, Sarah Paoli-Sanchez, left her house (the "Sanchez residence") because Plaintiff was intoxicated and she did not want to engage with him and went to her mother's apartment, about one mile away on 36th Street in Tucson (the "36th Street apartment"). *City Defendants' Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment* ("*DSOF*"), ¶ 1; *Plaintiff's Separate and Controverting Statement of Facts* ("*PSOF*"), ¶ 4. Plaintiff telephoned his wife after she left and told her that he was going to get his shotgun and "fuck somebody up." *DSOF*, ¶ 2. This prompted Mrs. Paoli-Sanchez to call 911 and ask that the police check on the welfare of Plaintiff and their children, who were also at the Sanchez residence. *DSOF* ¶ 2; *PSOF ¶* 2.

A number of officers from the Tucson Police Department, including Sergeant Oscar Caballero and Officer George Bravo, went to the 36th Street apartment. *PSOF* ¶ 3, 4. Sergeant Caballero and several other officers then went to the Sanchez residence, leaving Officer Bravo alone at the 36th Street apartment. *PSOF* ¶ 4. Subsequently, Plaintiff arrived at the 36th Street apartment and, although the nature of

1 their interactions is disputed, engaged with Officer Bravo who struck Plaintiff in the
2 head at least two times with the butt-stock of his rifle. *PSOF* ¶ 7. While Officer
3 Bravo continued to engage Plaintiff, Sgt. Caballero and Lt. Scott joined in the efforts
4 to subdue Plaintiff. *PSOF* ¶ 9. Officer Jason Garrels and Officer Eric Evans then
5 also engaged with Plaintiff, with Officer Garrels applying a taser and Officer Evans
6 striking him. *PSOF*, ¶ 10.

7 **II.     Legal Standard**

8        Summary judgment is appropriate when there is no genuine issue as to any
9 material fact and the moving party is entitled to judgment as a matter of law. Fed. R.
10 Civ. P. 56. Summary judgment is appropriate when there is "no genuine dispute as
11 to any material fact and the movant is entitled to judgment as a matter of law." Fed.
12 R. Civ. P. 56(a). Rule 56 also allows the Court to grant summary adjudication, or
13 partial summary judgment, when there is no genuine issue of material fact as to a
14 particular claim or portion of that claim. Fed. R. Civ. P. 56(a). The standards that
15 apply on a motion for summary judgment and a motion for summary adjudication are
16 the same. *See* Fed. R. Civ. P. 56 (a), (c).

17        Summary judgment, or summary adjudication, is appropriate "after adequate
18 time for discovery and upon motion, against a party who fails to make a showing
19 sufficient to establish the existence of an element essential to that party's case, and
20 on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,
21 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of
22 informing the Court of the basis for its motion, and of identifying those portions of

1  the pleadings and discovery responses that demonstrate the absence of a genuine
2  issue of material fact for trial.  *Celotex*, 477 U.S. at 323.  A party demonstrates
3  summary adjudication is appropriate by "informing the district court of the basis of
4  its motion, and identifying those portions of 'the pleadings, depositions, answers to
5  interrogatories, and admissions on file, together with affidavits, if any,' which it
6  believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477
7  U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

8  If the moving party meets its initial burden, the nonmoving party must go
9  beyond the pleadings and, by its own affidavits or discovery, set forth specific
10 material facts showing that there is some genuine issue that is unsuitable for
11 resolution without trial.  *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.,* 477 U.S. at
12 250.  An opposing party "must do more than simply show that there is some
13 metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The
14 nonmoving party is required to present evidence of specific facts, by affidavit or
15 through admissible discovery material, in support of its contention that a factual
16 dispute exists.  *Id.* at 586 n.11; Fed. R. Civ. P. 56(c).  In resolving a motion for
17 summary judgment, the Court can consider only admissible evidence.  *Orr*, 285 F.3d
18 at 773 (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d
19 1179, 1181 (9th Cir. 1988)).  Further, the opposing party is not required to establish a
20 material issue of fact conclusively in its favor; it is sufficient that "the claimed factual
21 dispute be shown to require a jury or judge to resolve the parties' differing versions
22

1 of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

**III.   Discussion**

Plaintiff's Complaint alleges six causes of action. In Counts I and II, Plaintiff alleges assault and battery against Bravo, Garrels and Evans. In Counts III and IV, Plaintiff alleges gross negligence and negligence against Bravo, Garrels and Evans. In Count V, Plaintiff alleges that the City was negligent in the supervision, training, and retention of Bravo, Garrels and Evans. And, in Count VI, Plaintiff alleges, under 42 U.S.C. § 1983, his civil rights were violated by Bravo, Garrels and Evans through their use of unreasonable force in violation of the Fourth and Fourteenth Amendments, and by the City which "was deliberately indifferent to the rights of people interacting with its poorly-trained officers." *Complaint*, pp. 3-6. In their motion, Defendants seek summary judgment on the entirety of Counts III (gross negligence), IV (negligence), V (negligent supervision, training and retention), and in favor of the City on Count VI (claim under 42 U.S.C. § 1983).

**A.   Negligence and Gross Negligence of the Individual Defendants**

In Counts III and IV, Plaintiff alleges that Bravo, Garrels and Evans were grossly negligent and negligent "in using unnecessary and unreasonable force." *Complaint*, ¶¶ 23, 26. Defendants contend that the negligence claims "should be dismissed because excessive force is an intentional tort, not a negligence tort; therefore no cause of action exists for negligent use of excessive force." *Motion*, p. 4. In response, Plaintiff contends that there is "nothing in Arizona law preventing

5

1  [Plaintiff] from alleging that officers acted negligently or recklessly," and that it is
2  appropriate and commonplace to plead these claims as an alternative to the
3  intentional use of force. *Opposition*, pp. 6-7.

4  Setting aside for a moment the authorities cited by the parties in support of
5  their respective positions on the issue, a review of cases decided in the Ninth Circuit
6  appear to support the Defendants' position. In *Whitefeld v. Tri–Metropolitan Transp.*
7  *Dist.*, No. 06–cv–1655–HA, 2009 WL 839484 (D.Or. Mar. 30, 2009), the Oregon
8  District Court stated that "a state common-law claim of negligence may be
9  maintained separately from a § 1983 claim only when the negligence claim is based
10 on facts that are different from the facts on which the § 1983 claims are based." *Id.*
11 at *11.

12 In support of its holding, the *Whitefield* court cited a previous decision from
13 the Oregon District Court, *Shilo v. City of Portland*, Civ. No. 04–130–AS, 2005 WL
14 3157563 (D. Or. Nov. 22, 2005), where the court recognized that "a plaintiff may
15 allege negligence as a basis for recovery separate from § 1983 for acts arising in the
16 Fourth Amendment search and seizure context," but that any such claim "should not
17 be founded on the same facts that give rise to the § 1983 claim." *Shilo*, 2005 WL
18 3157563 at *1. *Shilo*, in turn, cited *Lewis v. City of St. Petersburg*, 260 F.3d 1260
19 (11th Cir. 2001), where the Eleventh Circuit, applying Florida law, ruled that the
20 plaintiff's claims for the intentional use of excessive force and for negligence
21 survived the defendants' motion to dismiss, but only because discovery had yet been
22 undertaken to determine whether the defendant officers had negligently or

6

1  intentionally fired their weapons at the plaintiff. *Id*. at 1264. In reaching its decision,

2  however, the Eleventh Circuit offered the following summary of the applicable

3  Florida law:

> [A] separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force. Nevertheless, the negligence component must pertain to something other than the actual application of force during the course of the arrest.

7  *Id*. at 1263 (quoting *City of Miami v. Sanders*, 672 So.2d 46, 47–48

8  (Fla.Dist.Ct.App.1996) ("it is not possible to have a cause of action for 'negligent'

9  use of excessive force because there is no such thing as the 'negligent' commission

10  of an 'intentional' tort").

11  In an effort to overcome this line of authority, Plaintiff argues that Arizona

12  law provides that police officers, "like other public employees, are 'subject to the

13  same tort law as private citizens.'" *Opposition*, p. 6 (citations omitted). Plaintiff

14  then offers several examples of cases "where plaintiffs have claimed negligent and

15  intentional tort theories against police officers." *Id*. p. 7. As the Defendants note,

16  however, each of the cases cited by Plaintiff is consistent with the principles adopted

17  by the Oregon District Court in *Whitefield* and *Shilo*.

18  In the relevant claims from *Hulstedt v. City of Scottsdale*, 884 F.Supp.2d 972

19  (D. Ariz. 2012), the plaintiff alleged that two officers used excessive force and were

20  negligent when they shot David Hulstedt, the plaintiff's ward. At the summary

21  judgment stage, Judge Snow concluded that the officers' use of force by shooting

22

7

1  David was excessive. *Id*. at 1006. The plaintiff also alleged that the officers were

2  liable for negligently shooting David. Addressing that claim, Judge Snow explained:

> Arizona state courts have established a common-law immunity from mere negligence for police officers "to assure continued vigorous police work." *Landeros v. City of Tucson*, 171 Ariz. 474, 475, 831 P.2d 850, 851 (App.1992) (quoting *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982)). Police making discretionary decisions while acting in their official capacity in Arizona are only liable "if the plaintiffs establish[ ] gross negligence." *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 204, 16 P.3d 757, 765 (2001); *see also Marlowe v. Pinal Cty.*, 2008 WL 4264724 (D.Ariz. Sep. 15, 2008). Plaintiffs have not alleged that the officers engaged in gross negligence, and the time to amend their complaint is long past.

9  *Hulstedt*, 884 F.Supp.2d at 1017. The court therefore granted summary judgment to

10 the defendants on the negligence cause of action. *Id*. Contrary to Plaintiff's

11 contentions, the fact that the plaintiff in *Hulstedt* failed to adequately allege a claim

12 for gross negligence renders the decision largely useless here. As pointed out in the

13 Oregon cases, a negligence cause of action may be brought against a police officer in

14 conjunction with a claim for excessive use of force, but the facts supporting the

15 negligence claim must be based upon a distinct act of negligence and "must pertain to

16 something other than the actual application of force during the course of the arrest."

17 Here, discovery has revealed that the force used against Plaintiff was entirely

18 intentional and Plaintiff has identified no separate act of negligence by the individual

19 defendants that is alleged to have played a part in the incident.

20 A good illustration of a situation where alternative claims of negligence and

21 intentional torts were appropriately presented to the trier of fact is found in another

22 case cited by Plaintiff, *Guardas v. United States*, 600 F.Supp.2d 2059 (D.Ariz. 2009).

8

1  There, the plaintiff alleged claims of negligence and assault and battery against the
2  defendant border patrol agent who had shot him. *Id*. at 2060. At trial, it was
3  disputed whether the shooting was intentional or accidental. *Id*. at 2063. Based on
4  the testimony of the agent and other evidence, the court concluded that the agent had
5  intentionally shot the plaintiff, believing he had a weapon. *Id*. at 2063. As such, the
6  court ruled in favor of the defendant agent on plaintiff's claim of negligence. *Id*. at
7  1064. The court also ruled in favor of the defendant agent on plaintiff's assault and
8  battery claim, finding the shooting justified. *Id*.

9  Here, unlike the situation in *Guardas*, there is no dispute that the force used by
10 the officers against Plaintiff was intentionally employed. As the Defendants contend,
11 Plaintiff has presented no facts that, if true, would permit a jury to conclude that the
12 Defendant officers were negligent in their use of force. As stated in their motion and
13 as reiterated at the hearing on this matter, the Defendants' contention is that they
14 intentionally used force and that they were justified in doing so. Accordingly,
15 because a state law claim of negligence may be maintained separately from a section
16 1983 claim only when the negligence claim is based on facts that are different from
17 the facts on which the section 1983 claim is based, Defendants are entitled to
18 summary judgment on Plaintiff's negligence and gross negligence claims.

19 **B.   Negligent Supervision, Training and Retention**

20 In Count V of the Complaint, Plaintiff alleges that the City was negligent in its
21 supervision, training and retention of Bravo, Garrels and Evans. *Complaint*, pp. 5-6.
22 The City contends that "there is absolutely no evidence to support Plaintiff's

9

1 conclusory allegation of negligent supervision, training, or retention against the
2 City." *Motion*, p. 6. Plaintiff asserts that there is "ample evidence" in support of the
3 claim and contends that the City attempts to "gloss over numerous facts," and has
4 even resorted to applying an incorrect standard to evaluate the claim of negligent
5 supervision and retention. *Opposition*, p. 8.

6 The threshold issue to be sorted is the standard by which the City's allegedly
7 negligent supervision and retention is to be measured. Plaintiff argues that the
8 correct standard is set forth in *Boomer v. Frank*, 993 P.2d 456 (Ariz. App. 1999).
9 The City contends that *Boomer* applies to an *individual* defendant's liability for
10 supervision of another rather than a *municipal* defendant's liability for negligent
11 supervision of its employees, and argues that the proper standard for municipal
12 liability is found in *Humana Hosp. Desert Valley v. Super. Ct. of Ariz. in and for*
13 *Maricopa Cnty,* 742 P.2d 1382 (Ariz. App. 1987). The Court agrees with the City.

14 As Defendants note, Plaintiff relies on the fact that Sgt. Caballero made a
15 decision to leave Bravo alone at the apartment complex as the basis for his negligent
16 supervision claim. However, Sgt. Caballero is not a named defendant. Rather,
17 Plaintiff seeks to impose liability against the City. In *Humana*, the plaintiff sued
18 Humana Hospital for negligently allowing one of its physicians to practice on its staff
19 and for negligently supervising the doctor. 742 P.2d at 1386. The Arizona Court of
20 Appeals stated that:

21 > To prove a negligent supervision theory, a plaintiff must establish that
22 > the hospital knew or should have known that a physician was not

10

> competent to provide certain care and that the hospital's failure to supervise the physician caused injury to the plaintiff.

*Id.* As the City notes, this standard, and not that described in *Boomer*, has been applied by the courts in this district when evaluating a municipality's supervision and retention of its police officers. *See, e.g., Williams v. City of Mesa*, 09-CV-1511-PHX-LOA, 2011 WL 836856 at *15 (D.Ariz. March 9, 2011); *Vasquez v. City of Phoenix*, 04-CV-481-PHX-DGC, 05-CV-608-PHX-DGC, 2006 WL 1147716 at *4 (D.Ariz. May 1, 2006). As such, the Court will rely on the *Humana* standard to evaluate Plaintiff's claims of negligent supervision, retention and training.

In support of his claim of negligent training, Plaintiff asserts that the City failed to provide the extra training necessary to deploy "a lone, rifle-armed officer to address a noncompliant subject in a less than lethal manner." Plaintiff contends that the City was aware of the need for such training because it provided the training to its SWAT officers. Additionally, Plaintiff asserts that the City's police department failed to instruct its officers and commanders on "how and when to deploy officers with rifles and that such deployment should always include cover officers." *Opposition*, p. 8. Without this necessary training and cover, Plaintiff contends that Bravo "reacted unprofessionally" and "had no other option but to strike [Plaintiff] in the head with his rifle." *Id.*, p. 9.

In reply, the City states that "Plaintiff is not claiming that any of the officers lacked training based on their actual training records, or that the City or police department's training is lacking. Rather he relies on his own conclusory arguments

11

1 and his 'facts' that are mischaracterizations of the actual testimonies in this case."

2 *Reply*, p. 9. While the Court does not agree entirely with the City's argument, Bravo

3 has failed to offer evidence that would allow a jury to find in his favor under the

4 *Humana* standards.

5     It is undisputed that Bravo struck plaintiff with the butt end of his rifle.

6 Plaintiff has also presented evidence that Bravo was not trained on the defensive use

7 of a rifle. Sergeant Cabellero testified that he was not rifle trained, and further

8 explained that:

> There's no specific instruction on – on what a regular patrol operator, rifle operator is supposed to do when confronted with a subject where they have to use force, other than deadly force or the threat of deadly force.
>
> So, in other words, SWAT operators get training in how to use patrol rifles as a defensive tool, regular uniform officers don't.

13 *Opposition*, Ex. 4, Deposition of Oscar Caballero, 136:16-24. The Court finds that

14 from this testimony a reasonable juror could conclude that Bravo should not have

15 been deployed with a rifle without additional training. However, that conclusion

16 does not end the inquiry.

17     Under *Humana*, Plaintiff is obligated to show that the failure to train Bravo in

18 the use of the rifle was the cause of his injury. Plaintiff attempts to meet this

19 obligation by citing to Bravo's testimony that, while he was trained to transition from

20 handgun to going "hands-on" with a suspect, he was not trained how to go "hands-

21 on" with someone when he had his rifle. *PSOF*, ¶¶ 13, 18. However, the cited

22 testimony comes from a transcript of Bravo's testimony given during TPD's

disciplinary proceedings. *See PSOF*, Ex. 3. The Court previously ruled that the statements of the witnesses provided during TPD's disciplinary hearings were inadmissible except "for impeachment purposes if those witnesses testify inconsistently on the stand in this case." *See Order* (Doc. 98), p. 5. As such, Plaintiff has not provided admissible evidence of causation in relation to his claim that the lack of training resulted in Bravo's use of excessive force.

Moreover, even if Plaintiff's asserted facts were supported by admissible evidence, they would nevertheless prove insufficient to support the negligent training claim. This is because Plaintiff has not offered any evidence or testimony that would allow a jury to find a nexus between the lack of training and Plaintiff's injuries. For example, the Court can locate no evidence or testimony that could support the notion that additional training would have caused Bravo to not "react[] unprofessionally" or would have provided Bravo with options other than striking Plaintiff in the head. Plaintiff does not explain how Bravo could have reacted more professionally and does not identify the other options that would have been available to him had he been properly trained.

Likewise, Plaintiff has not offered any admissible evidence that would support the assertion that, by leaving Bravo alone at the scene, the City caused Plaintiff's injuries. Plaintiff has offered testimony from then Chief Roberto Villasenor, given during Bravo's disciplinary proceedings, that "it was a bad tactical decision to leave Bravo alone with the rifle." *PSOF*, ¶ 15. Plaintiff also offers other testimony from the disciplinary proceedings. *Id*., ¶ 11. However, as noted above, the Court

13

previously ruled that material from the disciplinary proceedings is inadmissible except for impeachment purposes. *See Order* (Doc. 98). Other than the inadmissible testimony, there is no testimony, expert or otherwise, that supports Plaintiff's argument that Bravo should not have been left alone at the scene. Simply put, Plaintiff is obligated to show that the City's misdeeds in failing to train and supervise were not only negligent, but the proximate cause of his injuries. *Inmon v. Cran Rental Servs., Inc.*, 67 P.3d 726, 733 (Ariz. App. 2003) (to prove liability, training must be negligent and be the proximate cause of plaintiff's injuries). The admissible evidence offered by Plaintiff is not such that it would allow a reasonable jury to determine this claim in Plaintiff's favor. *Celotex*, 477 U.S. at 322 (summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case.") In reaching this conclusion, the Court is not suggesting that Bravo's use of force was appropriate; rather, the Court finds that Plaintiff has not presented evidence from which a jury could find that Bravo's lack of training or supervision caused Plaintiff's injuries.

Next is Plaintiff's claim that the City negligently retained Bravo as a police officer. To prove negligent retention, Plaintiff must show that the City knew or should have known that Bravo was unfit or not a competent police officer and that his retention by the City caused Plaintiff's injuries. *Humana*, 742 P.2d at 1386; *City of Phoenix v. Peterson*, 462 P.2d 829, 832 (Ariz. App. 1969). In support of this claim, Plaintiff offers the following facts:

> Bravo displayed a habit of over-arming himself, demonstrating that he was not competent to be a law enforcement officer . . . . Before striking [Plaintiff] in the head, [the City's police department] disciplined Bravo for being uncooperative and not forthcoming with information when interviewed regarding another officer's use of force.

*PSOF*, ¶ 26. Although this evidence is quite thin, other excessive force cases suggest that a defendant city's retention of an officer could be proven to be negligent where the defendant officer had previously "failed to report the use of force as required by the City's policies and procedures." *Vasquez*, 2006 WL 1147716 at *4. Bravo's disciplinary record shows that he was involved in an incident in which another officer was accused of using excessive force and Bravo was found to be "not forthcoming and had to be interviewed a total of six (6) times to obtain a complete account of [the] incident." *PSOF*, ¶ 26, Exhibit 18. Because Bravo's previous discipline involved what could be construed as a "cover-up" of another officer's use of force, a reasonable jury could find that Bravo's use of force was reasonably foreseeable by the City.

### C. *Monell* Liability

A *Monell* claim premised on an allegedly unconstitutional municipal policy requires the plaintiff to establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy [was] the moving force behind the constitutional violation. *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (citations and quotation marks omitted). "A policy can be one of action or inaction," *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.

2006), and can be formal or informal, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988).

In his opposition, Plaintiff does not identify any unconstitutional formal policy that the City expressly adopted and followed as official policy. Rather, he argues that the City is liable for the informal policy of negligently training its officers. *Opposition*, p. 10. An informal policy under *Monell* "exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 671 (9th Cir. 2015) (citation and quotation marks omitted), *reh'g granted*, 809 F.3d 536 (9th Cir. 2015).

The Supreme Court has noted that "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). As such, a claim for inadequate training under *Monell* is only sufficient "where that city's failure to train reflects deliberate indifference to the rights of persons with whom the police come in contact," and that deliberate indifference was the moving force of the violation of the plaintiff's federally protected right. *Id*. at 388. "[O]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a 'policy or custom' that is actionable under § 1983." *Id*. at 389.

16

For Plaintiff's claim to survive the City's motion for summary judgment, he must present evidence that demonstrates specific training deficiencies that amounted to a deprivation of a constitutional right and either: (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations. 489 U.S. at 390–91. The failure must be the result of "a 'deliberate' or 'conscious' choice by a municipality." *Id*. at 389. Neither negligent nor even grossly negligent training by itself gives rise to a § 1983 municipal liability claim under *Monell*. *Id*. at 391-92 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident. . . . Thus, permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities—a result we rejected in *Monell*.").

Here, Plaintiff's stark allegations contain no facts from which the Court, or a jury, could find either a pattern of constitutional violations by the City or information that shows additional training was obviously necessary. Moreover, there is nothing in the record that would allow a jury to conclude that the alleged failure to train was deliberate or a conscious choice made by the City. As such, Plaintiff's *Monell* claim against the City fails.

. . . .

. . . .

## IV.     Recommendation

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review, **grant** summary judgment on the entirety of Counts III (gross negligence) and IV (negligence); **grant** summary judgment on the Count V claims of negligent supervision and training, **grant** summary judgment on the Count VI claim under 42 U.S.C. § 1983 against the City; and **deny** summary judgment on the Count V claim of negligent retention of Defendant Bravo.

The Magistrate Judge further recommends that trial be set for Counts I and II in their entirety; the Count V claim against the City for negligent retention of Defendant Bravo; and the Count VI claims under 42 U.S.C. § 1983 against Defendants Bravo, Garrels and Evans.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  No replies shall be filed without leave of the District Court.  If any objections are filed, this action should be designated case number: **CV 14-1903-TUC-RM**.  Failure to timely file objections to

1 any factual or legal determination of the Magistrate Judge may be considered a
2 waiver of a party's right to *de novo* consideration of the issues.  See *United States v.*
3 *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (*en banc*).

Dated this 1st day of June, 2016.

*Jacqueline M. Rateau*
Jacqueline M. Rateau
United States Magistrate Judge